UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.

KARL MORRISON and
SORINA MORRISON,

          Defendants.

_____

**DECISION AND ORDER**
16-MR-118

     Defendants Karl and Sorina Morrison were charged with conspiracy to import

and export controlled substances and controlled substance analogues, in violation of 21

U.S.C. §§ 952(a), 953(a), 953(c), 960(a)(1), 960(b)(3), and 963.  W.D.N.Y. Docket No.

16-MJ-138, Docket Item 1 (criminal complaint).

     Pending before this Court is the Morrisons' motion (Docket Item 1),[1] pursuant to

18 U.S.C. § 3145(b), to revoke the orders of United States Magistrate Judge H. Kenneth

Schroeder, Jr., dated October 24, 2016 (W.D.N.Y. Docket No. 16-MJ-138, Docket Items

6 & 7), detaining the defendants pending trial.

     For the reasons set forth below and in accordance with 18 U.S.C. §§ 3142(e),

3142(g), and 3145(b), the defendants' motion for revocation is DENIED.

---

[1] Unless otherwise noted, record citations are to documents filed in this case, W.D.N.Y.
Docket No. 16-MR-118.

## I. PROCEDURAL HISTORY

On October 17, 2016, at the time of the defendants' initial appearance, the government moved for detention. *See* W.D.N.Y. Docket No. 16-MJ-138, Minute Entry dated Oct. 17, 2016. On October 24, 2016, Judge Schroeder held a detention hearing. *See* Docket Item 2 at 9-36 (transcript). After finding that there is no condition or combination of conditions that will reasonably assure the appearance of the defendants as required and the safety of any other person and the community, Judge Schroeder ordered that the defendants be detained pending trial. *See id.* at 33; W.D.N.Y. Docket No. 16-MJ-138, Docket Items 6 & 7.

On the following day, the defendants filed a one-page "Notice of Appeal" from Judge Schroeder's orders—i.e., a Notice of Motion under 18 U.S.C. § 3145(b)—to this Court. *See* Docket Item 1. Then, on November 15, 2016, the defendants filed a memorandum in support of their motion, along with a transcript of the hearing before Judge Schroeder. Docket Item 2. The government responded on November 28, 2016, Docket Item 4, and on December 13, 2016, this Court heard oral argument. Docket Item 5. The Court permitted the parties to filed additional submissions, *see id.*, which the defendants did on December 21, 2016. Docket Item 7.

This Court has reviewed all the papers, exhibits, and evidence submitted by the parties regarding the pretrial detention or release of the defendants, including the transcript of the detention hearing before Judge Schroeder.

## II. APPLICABLE LAW

### A.      Review of a Detention Order

"If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The standard of review is *de novo*.  *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (Summary Order) (citing *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985)).  When conducting this review, "the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014) (quoting *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).

### B.      Pretrial Detention

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e)(1).  "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence," 18 U.S.C. § 3142(f); on the other hand, a finding that a defendant poses a risk of flight may be supported by only a preponderance of the evidence.  *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011).  But neither finding necessarily needs to be supported by testimony under oath, as it "is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Additionally, because the criminal complaint charges the defendants with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in . . . the Controlled Substances Import and Export Act," 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the

community." *See* 18 U.S.C. § 3142(e)(3).  The Second Circuit recently summarized the

effect of this presumption:

> Such a presumption shifts to the defendant "a limited burden of
> production—not a burden of persuasion" to adduce "evidence that he does
> not pose a danger to the community or a risk of flight."  *United States v.
> Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001).  Such production does not
> eliminate the presumption; rather, the presumption "remains a factor to be
> considered among those weighed by the court," . . . "however, the
> government retains the ultimate burden of persuasion."  *United States v.
> English,* 629 F.3d at 319 (internal quotation marks omitted).

*United States v. Artis*, 607 F. App'x 95, 96–97 (2d Cir. 2015) (Summary Order).

### III. FINDINGS AND CONCLUSIONS

**A.     Nature and Circumstances of the Offense**

As noted above, the defendants are charged with conspiracy to import and

export controlled substances and controlled substance analogues in violation of 21

U.S.C. § 963. The maximum penalty of twenty years subjects the defendants to the

rebuttable statutory presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3)(A).

As also noted above, this presumption remains a factor for the district court to weigh

even if—and after—a defendant meets his or her burden of production, although the

government retains the ultimate burden of persuasion.  *See Artis*, 607 F. App'x at 96-97.

The quantities of controlled substances that were seized in this case were

relatively large, and the specific drugs involved were particularly dangerous.  Sorina

Morrison allegedly attempted to ship one-half kilogram of pentylone, a Schedule 1

controlled substance, from the United States to their home address in Canada.

According to the government, that quantity converts to 250 kilograms of marijuana

under the United States Sentencing Guidelines.  *See* Docket Item 4 at 3-4 n.4 (citing

U.S.S.G. § 2D1.1 App. Note 8(D) (drug equivalency table)).  For comparison, a half

kilogram of cocaine converts to 100 kilograms of marijuana.  *See* U.S.S.G. § 2D1.1

App. Note 8(D).  Another seized parcel contained 6 grams of furanyl fentanyl (a fentanyl

analogue), and another contained substances the prosecutor described as "cutting

edge" and "new" to the Drug Enforcement Administration's "Special Testing Lab."

Docket Item 2 at 12.

On the other hand, as the defendants argue (and as Judge Schroeder

acknowledged), Karl and Sorina Morrison may not bear all the responsibility for

conceiving and orchestrating the alleged drug-trafficking conspiracy.  The defendants

apparently have a difficult relationship with their son, Albert Morrison, whom defense

counsel described as a drug user with a history of violent conduct.  Docket Item 2 at 20.

So the defendants may have carried out their drug-trafficking mission at their son's

request or demand.

But even if the defendants were acting as drug mules rather than drug

masterminds, they do not appear to have been ignorant of what they were doing;

indeed, they consistently took steps to cover their tracks.  When entering the United

States, for example, they allegedly told officials that they were crossing the border to go

shopping.  But they spent only ten minutes at the outlet mall before moving on to pick

up the packages at the United Parcel Service ("UPS").  Karl Morrison, without Sorina,

entered the UPS store to pick up the packages.  The Morrisons then removed the

original packages' shipping labels and discarded them in three different garbage cans.

In preparation for shipping the parcels back to Canada, Karl allegedly obtained a phone book from Walmart and used the address of an apparently unrelated individual living in Niagara Falls, New York, as a return address.  Sorina then entered the UPS store, without Karl, to ship the parcels (i.e., the opposite of the last time they were at the store).

Thus, the offense conduct is not nearly as innocuous as the defendants argue. On the contrary, it appears to be a serious conspiracy involving a significant quantity of dangerous drugs—a conspiracy that both defendants knew involved something illicit. The nature and circumstances of the offense therefore weigh in favor of detention.

**B.    Weight of the Evidence**

The government traced and recovered five packages that originated in China and were shipped to the defendants' UPS box.  *See* Docket Item 4 at 3.  It intercepted one of the parcels before the defendants' arrest; seized three parcels on the day of the arrest, October 15, 2016; and recovered the fifth parcel five days later.  *See id.* at 3. Forensic testing later revealed the contents of the packages to include furanyl fentanyl (a fentanyl analogue) and pentylone, among other substances.  *See* Docket Item 2 at 11-13.

The defendants claim that they did not know what was in the packages.  But as described above, the government conducted significant surveillance of the defendants on the day of their arrest, observing them retrieve four of the parcels in a way that was, in a word, deceptive.  *See* Docket Item 4 at 4.  Moreover, the incident on October 15,

2016, does not seem to be an isolated one.  The government also has records of six other packages (apart from the five that were seized) being shipped to the defendants' UPS box in 2016.  *See id.* at 5-6.  And according to U.S. Customs and Border Protection records, the retrieval dates for those packages correspond with the defendants' trips to the United States from Canada.  *See id.*

**C.      History and Characteristics of the Defendants**

According to the proffered evidence, Karl and Sorina Morrison have been entrepreneurial and hard-working since they immigrated to Canada from Romania 20 years ago.  They are well educated, with university degrees in economics.  Sorina has had to overcome not only the challenge of adjusting to a new country, but also the physical adversity of uterine cancer.  Significantly, this is each of the defendants' first criminal charge.  In seeking release pending trial, the defendants have stated that they are willing to post a bond in a substantial amount, although at least one of them would be required to travel back to Canada to do so.

But there nevertheless is a significant flight risk in this case.  The defendants lack ties not only to the Western District of New York but to the United States as a whole. They reside in Canada, and the property they own is in Canada.  They retain their Romanian citizenship.  And their most immediate and significant family member—their son Albert, whom defense counsel blames as the culprit—also permanently resides in Canada.  Beyond that, the twenty-year maximum that the defendants face is itself a motive for flight.  *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007).

Although the defendants have signed a waiver of extradition, such a waiver may not become valid until an extradition request is pending in Canada and may be subject to withdrawal.  *See generally United States v. Kouchekzadeh*, 2008 WL 1902434, at *3 (W.D.N.Y. Apr. 28, 2008).  Moreover, the duplicity of the defendants' alleged conduct raises serious questions about the legitimacy of their promises to appear when required.

In sum, the history and characteristics of the defendants evidence a significant flight risk.

**D.     Danger to the Community**

Although there may be little evidence that the defendants pose a direct danger to persons in the community, the trafficking of narcotics does.  *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985).  As noted above, this case involves relatively large quantities of dangerous and potent drugs.  Such drugs, whether carried into this country or out of it, pose dual threats of addiction and death.  And the fact that the packages recovered in this case were only some of 12 parcels shipped from China and delivered to the defendants' UPS box in 2016 suggests that the danger was not isolated, either.

## CONCLUSION

For the reasons set forth above, the Court finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the appearance of the defendants as required[2] and the safety of any other person and the community. Therefore, the defendants' motion (Docket Item 1) seeking to revoke the detention order of United States Magistrate Judge Schroeder is DENIED.

SO ORDERED.

Dated: December 23, 2016
       Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[2] This finding of flight risk need be based on only a preponderance of the evidence. *See English*, 629 F.3d at 319.